# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-1018

_____

George Goff;                                    *
                                                *
        Plaintiff-Appellee,          *
                                                *
Allen Langley, Class Representative;            *
Tim Thompson, Class Representative;             *
                                                *
        Plaintiffs,                  *  Appeals from the United States
                                                *  District Court for the
    v.                              *  Southern District of Iowa.
                                                *
Charles Harper; Ronald Welder;                  *
John Henry; Gerardo Acevedo,                    *
Warden;                                         *
                                                *
        Defendants-Appellants.       *

_____

No. 99-3217

_____

George Goff; Allen Langley, Class               *
Representative; Tim Thompson, Class             *
Representative;                                 *
                                                *
        Plaintiffs-Appellees,        *
                                                *
Michael A. Bartnick;                            *
                                                *
        Intervenor Plaintiff,        *
    v.                              *

|  | * |
| Charles Harper; | * |
|  | * |
| Defendant-Appellant, | * |
|  | * |
| Ronald Welder; John Henry; | * |
|  | * |
| Defendants, | * |
|  | * |
| Gerardo Acevedo, Warden; James | * |
| Helling; Paul Hedgepeth, Deputy | * |
| Warden; John Emmett, Security | * |
| Director; James McKinney, Deputy | * |
| Director of Corrections in charge for | * |
| institutions for the State of Iowa; | * |
|  | * |
| Defendants-Appellants. | * |

_____

Submitted:  September 13, 2000

Filed:  December 19, 2000
_____

Before RICHARD S. ARNOLD, LAY and FAGG, Circuit Judges.
_____

LAY, Circuit Judge.


Inmates in lockup at the Iowa State Penitentiary ("ISP") brought a claim against Charles Harper and other Prison Officials ("Prison Officials") based on constitutional violations in long-term lockup at ISP.  In 1994, before the merits of the case were heard, the district court granted the inmates a preliminary injunction based on the denial of time-cuts from their lockup time.  Prison Officials appealed the injunction at that time.

Prison Officials now appeal the denial of their motion to dismiss. Prison Officials argue that previous consent decrees bar the action based on subject matter jurisdiction. The district court found that there existed subject matter jurisdiction; we agree.

Prison Officials also appeal the district court's finding of constitutional violations at ISP. After concluding that violations existed, the district court ordered Prison Officials to submit a Plan to correct the violations. The district court approved the fourth Plan submitted by Prison Officials who subsequently implemented their Plan. Despite such implementation, Prison Officials appeal the district court's finding on the ground that it is clearly erroneous and establishes a bad precedent.

## I. Background

On July 6, 1990, George Goff ("Goff"), an inmate at ISP, filed a Complaint against Prison Officials based on 42 U.S.C. § 1983. Goff claimed that the harsh disciplinary sanctions associated with lockup were violating his Eighth and Fourteenth Amendment rights.

On August 7, 1990, Prison Officials moved to dismiss the Complaint on the basis that it presented broad and conclusory claims. The district court allowed Goff to amend his Complaint and the court ruled that the Amended Complaint satisfied the requirements of Rule 12 of the Federal Rules of Civil Procedure and denied the motion to dismiss.

On December 14, 1993, Goff filed a Motion for Preliminary Injunction, asking that Prison Officials, specifically Charles Harper, an Administrative Law Judge, and Ron Welder, the Executive Assistant to the Warden, not be involved in any of his disciplinary matters. The court granted the injunction. Prison Officials appealed the injunction, and on July 26, 1995, this court found that the district court had abused its

discretion, vacated the injunction, and remanded the case.  See Goff v. Harper, 60 F.3d 518, 521 (8th Cir. 1995).

In May and August of 1994, Goff's case went to trial.  On November 7, 1994, Goff filed a second preliminary injunction request, asking the court to prohibit Prison Officials from denying lockup inmates a time-cut from their lockup time.  The district court granted the injunction and Prison Officials once again appealed.  This court stayed the appeal until the district court issued its final ruling in the case.  See Goff v. Harper, No. 96-1018 (8th Cir. Sept. 6, 1996) (order staying proceedings pending further order of the court).

On June 2, 1995, Goff moved for class certification, which was granted on September 13, 1995.  The class is comprised of all persons who have been, are now, or will be confined in ISP lockup.  A second trial was held in March and May of 1996.  After the second trial, the district court granted the motion of Goff and the other inmates to amend the Complaint alleging constitutional violations concerning mental health and lack of exercise for those confined to lockup.

After extensive evidentiary proceedings, on June 5, 1997, the district court filed a 118-page Order setting forth findings of fact and conclusions of law relating to constitutional violations by the Iowa State Penitentiary.  The court found four constitutional violations: 1) the violation of substantive due process resulting from the extraordinarily long lockup sentences; 2) the violation of the Eighth Amendment resulting from the inadequate mental health treatment received by mentally ill and mentally disordered inmates; 3) the violation of the Eighth Amendment resulting from the deprivation of exercise for inmates in lockup during the winter months; and 4) the violation of the Eighth Amendment resulting from the pandemonium and bedlam the mentally stable inmates must suffer because they are intermingled with the mentally ill inmates who either cannot or do not control their behavior.

-4-

The court directed Prison Officials to file a Plan to remedy the constitutional violations at ISP. On August 4, 1999, after consideration of three other Plans, the court approved the fourth Plan filed by Prison Officials.[1] Major changes were implemented by Prison Officials in response to the constitutional violations found by the court. First, the State of Iowa is building a ten million dollar, 200 bed special needs unit. A second 100 bed unit is to be built in the future. Second, the ISP changed their disciplinary system, redefining the procedures of lockup and releasing prisoners from extraordinarily long sentences. In addition, amnesty was declared for inmates as to disciplinary sentences before July 1, 1998. Finally, accommodations were made to provide inmates with indoor exercise facilities.

In the process of establishing a Plan to correct the violations at ISP, Prison Officials found existing consent decrees at ISP that may require them to seek court permission to implement their Plan. Because of the earlier consent decrees, Prison Officials filed a motion to dismiss for lack of subject matter jurisdiction. On September 20, 1999, the district court denied their motion.

Prison Officials now appeal the rulings of the district court. Officials argue that the district court erred in denying their motion to dismiss the case based on lack of subject matter jurisdiction. In addition, Prison Officials argue that the court erred in concluding that constitutional violations exist at ISP.

---

[1]The court considered the delay in developing a Plan to be almost entirely the fault of Prison Officials. However, the court credited Prison Officials with developing a better Plan due to the two Iowa legislative sessions which provided money to make the improvements possible.

## II. 1996 Appeal

The present appeal includes a long history. We begin by addressing the appeal from 1996.[2] The appeal was brought by Prison Officials based on a preliminary injunction granted by the district court. On September 6, 1996, this court stayed the appeal pending final adjudication of the merits by the district court. The final order was entered by the district court in August 1999, and Prison Officials filed a new appeal. This new appeal on the merits was consolidated with the 1996 appeal. As stated, Prison Officials now concede, in view of the decision on the merits, the 1996 appeal is moot; we agree.

## III. Constitutional Violations

### A. Consent Decrees

Prison Officials initially argue that this court lacks subject matter jurisdiction because the issues covered in the district court's opinion were previously resolved in consent decrees. The district court dismissed such arguments. As the district court found, Prison Officials confuse subject matter jurisdiction with a claim of issue preclusion. The district court found this issue was not raised in the pleading as an affirmative defense and was therefore waived. Alternatively, the district court found that the consent decrees had previously been vacated before the district court's opinion

---

[2]Goff filed a 42 U.S.C. § 1983 claim in the District Court for the Southern District of Iowa. The inmates claimed that Prison Officials changed the lockup time reduction practice in September 1994. As a result, inmates who were serving lockup for assault with serious injury were no longer eligible for time-cuts of lockup time. Goff requested and was granted a preliminary injunction enjoining Prison Officials from deeming the inmates ineligible.

on the merits was filed.  This issue requires no discussion.  There can be little question that the vacated consent decrees cannot serve as res judicata.

B.  The Merits

The record indicates, at least at the time of submission of this appeal, Prison Officials have already implemented a substantial part of the remedies ordered by the district court.[3]  Nonetheless, Prison Officials appeal the district court's finding of constitutional violations at ISP.  Prison Officials do not challenge any of the factual findings of the district court, but instead argue that the court's holding on the various constitutional issues should be set aside as being clearly erroneous.  The thrust of defendants' argument is that the district court has not followed any established objective standards in finding constitutional violations.

A discussion of constitutional violations in a prison setting requires a two-step analysis.  First, we must determine whether the liberty interest asserted by an inmate is an interest protected by the Constitution.  If we find a protected liberty interest exists, we must balance this interest against a State's interest in prison safety and security. See Turner v. Safley, 482 U.S. 78 (1987). In Turner v. Safley, the Supreme Court explained that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  Id. at 89.   The Court explained that "such a standard is necessary if 'prison administrators . . . , and not the courts, are to make the difficult judgments concerning institutional operation.'"  Id. at 89 (citing Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 128 (1977)).

---

[3]At oral argument, Prison Officials confirmed that a "hole in the ground" exists for the new special needs unit.  In addition, mentally ill patients have access to more psychologists, indoor space has been made for winter exercise, and new procedures are in place for lockup.

In Turner, the Court set forth a balancing test for determining the constitutionality of restrictions upon prisoners' rights. In determining whether a restriction is reasonable, courts should consider: (1) whether there is a valid, rational connection between the regulation and the interest asserted; (2) whether alternative means of exercising the right remain open to the prisoner; (3) the effect the requested accommodation will have on guards, other inmates, and the allocation of prison resources; and (4) whether there is some alternative which will accommodate the prisoner's needs with de minimis impact on the prison's asserted interests. See Turner, 482 U.S. at 87.

Without reference to the Turner balancing test,[4] the district court concluded that constitutional violations existed at ISP. The district court applied the appropriate standards for determining if the conditions at ISP were constitutional, but failed to take the analysis one step further and balance the liberty interests of the inmates at ISP with the State's penological interests. We recognize that this is not a First Amendment case, like Turner, but in Washington v. Harper, 494 U.S. 210 (1990), the Court resolved any confusion as to whether the Turner test should be applied beyond First Amendment cases. The Court explained that:

> Our earlier determination to adopt [the Turner] standard of review was based upon the need to reconcile our longstanding adherence to the principle that inmates retain at least some constitutional rights despite incarceration with the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration. These two principles apply in all cases in which a prisoner asserts that a prison regulation violates the Constitution, not just those in which the prisoner invokes the First Amendment. We made quite clear that the standard of review we adopted in Turner applies to all circumstances in which the needs of prison administration implicate constitutional rights.

---

[4]On appeal, neither side makes reference to the Turner case.

Id. at 223-224.

Further, in Timm v. Gunter, 917 F.2d 1093 (8th Cir. 1990), this court noted that "[a]lthough Turner is a first amendment case, we believe its analysis equally applies to other inmates' rights cases." Id. at 1099 n.8. The Timm case relied on the Ninth Circuit case of Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988). In Michenfelder, the court explained that "[t]hough all our prior decisions employing the Turner O'Lone analysis have involved infringements of inmates' first amendment rights, as were both Turner v. Safley and O'Lone v. Estate of Shabazz, [482 U.S. 342 (1987)] we believe that Turner v. Safley's suggested factors can be instructive in the context of other prisoners' rights cases." (citations omitted). The court further pointed out that:

> Not all four factors will be relevant to each case. . . . For example, the second Turner factor--availability of other avenues for exercising the right infringed upon--is much more meaningful in the first amendment context than the fourth or eighth, where the right is to be free from a particular wrong.

Michenfelder, 860 F.2d at 331 n.1.

In applying the Turner standard of review, we deem it far more efficient to allow the district court to initially apply these balancing principles than for this court. The district court has spent several years hearing testimony, visually inspecting the prison environment, and working with counsel. A remand to review its order under the Turner standards will allow parties to address the issues before the court. We are mindful that this may delay the ultimate decision in this case. Hopefully the parties may negotiate their differences during the course of these discussions. We make this observation particularly in light of the fact that Prison Officials have represented to this court during oral argument that they in good faith have implemented the Plan approved by the district court on their own volition and not necessarily in compliance with the court's

-9-

order.  Under the circumstances, we deem it beneficial to all parties to remand the case to the district court in order to properly review the court's order under the balancing principles of <u>Turner v. Safley</u>, 482 U.S. 78 (1987).

IT IS SO ORDERED.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.